FILED
United States Court of Appeals
Tenth Circuit

August 15, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ERIC WALKER; SHANNON
WALKER,

        Plaintiffs - Appellees,

  v.

BUILDDIRECT.COM
TECHNOLOGIES, INC.,

        Defendant - Appellant.

No. 12-6261
(D.C. No. 5:11-CV-00800-D)
(W.D. Oklahoma)

---

**CERTIFICATION OF QUESTION OF STATE LAW**

---

C. William Threlkeld, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Oklahoma, for Defendant - Appellant.

Tony Gould, Brown & Gould, PLLC, Oklahoma City, Oklahoma, for Plaintiff - Appellee.

---

Before **HARTZ**, **MCKAY**, and **MATHESON**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

      Under Tenth Circuit Rule 27.1 the United States Court of Appeals for the

Tenth Circuit submits to the Supreme Court of Oklahoma this request that the

court exercise its discretion under Okla. Stat. tit. 20, § 1602 (1997), to accept the following certified question of Oklahoma law:

> Does a written consumer contract for the sale of goods incorporate by reference a separate document entitled "Terms of Sale" available on the seller's website, when the contract states that it is "subject to" the seller's "'Terms of Sale'" but does not specifically reference the website?

The answer to this question should be determinative of the appeal now pending in this court, and it appears that there is no controlling precedent in the Supreme Court of Oklahoma. The Supreme Court of Oklahoma may reformulate the question.

## I.  BACKGROUND

In April 2008 Shannon and Eric Walker requested several samples of hardwood flooring from BuildDirect.com Technologies, Inc., a Canadian corporation, through BuildDirect's website. The next month they arranged over the telephone to purchase 113 boxes of flooring from BuildDirect for $8,559.70. BuildDirect emailed a two-page document entitled "Quotation" to Ms. Walker, who signed and dated the document and returned it to BuildDirect via fax. Aplt. App. at 33. The Quotation describes the type, amount, and price of the flooring purchased by the Walkers. And it includes 14 bullet points setting forth additional terms. The sixth bullet point states in full, "All orders are subject to BuildDirect's 'Terms of Sale.'" *Id.*

The Walkers allege that after they installed the flooring, they discovered that their home was infested with nonindigenous wood-boring insects. According to the Walkers, the insects have severely damaged the home, cannot be completely eradicated without destroying the home, and have caused the home to be subject to quarantine and possible destruction by the United States Department of Agriculture.

In July 2011 the Walkers filed suit against BuildDirect and Fuzhou BuildDirect Limited, LLC (a Chinese company, which apparently was never served with process and was later voluntarily dismissed from the action) in the United States District Court for the Western District of Oklahoma, invoking diversity jurisdiction. *See* 28 U.S.C. § 1332. They alleged that the flooring purchased from BuildDirect had contained the larvae of wood-boring insects that BuildDirect should have exterminated during the manufacturing process. Claiming to represent a class of similarly situated purchasers of BuildDirect's products, they asserted causes of action including fraud, breach of contract, negligence, trespass, breach of implied warranties of merchantability and fitness for a particular use, deceptive trade practices, products liability, and nuisance. They demanded a jury trial.

BuildDirect moved to compel arbitration. It pointed to the bullet point of the Quotation stating that the Walkers' purchase is "subject to BuildDirect's 'Terms of Sale.'" Aplt. App. at 33. It claimed that "Terms of Sale" refers to a

specific document bearing that name, which was available on BuildDirect's website. The document could be accessed by clicking on a hyperlink labeled "Terms of Sale" under the heading "Customer Service" near the bottom of each page of the website. The online Terms of Sale contained 15 numbered paragraphs, which provided, among other things, that the customer is responsible for shipping costs, that BuildDirect bears the risk of loss during shipping, and that the customer can return a product for any reason within 30 days of delivery for a full refund. One paragraph requires arbitration of disputes. It states:

> 12. ARBITRATION
> All disputes arising out of or in connection with this Agreement shall be referred to and finally resolved by a single arbitrator (the "Arbitrator") pursuant to the [Canadian] Commercial Arbitration Act, R.S.B.C. 1996, c. 55, as amended. The decision of the Arbitrator on all issues or matters submitted to the Arbitrator for resolution shall be conclusive, final and binding on all of the parties. The Arbitrator shall determine who shall bear the costs of arbitration pursuant to this section 12.

*Id.* at 53.

The Walkers responded that they were unaware of the online document and that it was not a part of the contract because it was not adequately referenced in the Quotation. The district court denied BuildDirect's motion, explaining that the Quotation was ambiguous and that it could not say as a matter of law that the Quotation incorporated the Terms of Sale. BuildDirect then initiated this interlocutory appeal. *See* 9 U.S.C. § 16(a)(1)(B) (authorizing immediate appeal of order denying motion to compel arbitration).

## II.    DISCUSSION

### A.    Alternative Ground For Disposition

Before addressing the question that we certify to the Supreme Court of Oklahoma, we briefly discuss an argument by the Walkers that could moot the certified question. The Walkers contend that even if the Quotation would otherwise incorporate the Arbitration clause of the Terms of Sale, the clause does not apply to their purchase because the Terms of Sale applies only to internet purchases.[1] We reject that argument.

Contrary to the Walkers' assertion, the Terms of Sale do not state that they apply *only* to orders placed on BuildDirect's website. Nor do the Terms of Use referenced in the Terms of Sale. Nor does anything in the Terms of Sale state that it cannot be incorporated by reference in another agreement. It states only that another signed agreement can override the provisions in the Terms of Sale (which the Quotation does not do, since it states that it is "subject to" the Terms of Sale) and that the Terms of Sale cannot be altered, supplemented, or amended unless in a signed written agreement.

---

[1] We note that the Walkers do not argue on appeal that the Arbitration clause is unconscionable. If it is determined that the Arbitration clause is otherwise incorporated into the contract and the Walkers wish to argue unconscionability, it would be necessary to remand to the district court for further proceedings (including possible factual development) to determine the forum (court or arbitrator) that should decide the issue of unconscionability and, if the court is the proper forum, whether the clause is unconscionable.

**B.    The Federal Arbitration Act**

Under the Federal Arbitration Act (FAA), if a federal district court determines that a suit is subject to an arbitration agreement, it shall, on application of a party, stay the litigation pending arbitration, *see id.* § 3, and "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," *id.* § 4.  "The existence of an agreement to arbitrate is simply a matter of contract between the parties." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997) (internal quotation marks omitted). "Generally, courts should apply ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute." *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) (internal quotation marks omitted).  The parties agree that Oklahoma law is controlling.  Consequently, the outcome of this appeal depends on whether, under Oklahoma law, the Quotation signed by Ms. Walker incorporated by reference the online Terms of Sale containing the arbitration clause.

We note, however, that the FAA limits state-law grounds for refusing to enforce an arbitration clause.  Although it provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, it preempts state-law rules that "stand as an obstacle to the accomplishment of the FAA's objectives," as by "interfer[ing] with fundamental attributes of

arbitration," *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (FAA preempted California law invalidating clauses in consumer adhesion contracts that preclude class actions (in lawsuits or arbitration)); *see also Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203 (2012) (per curiam) (FAA preempted West Virginia law invalidating contract clauses that require arbitration of negligence claims against nursing homes for injury or death); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("Courts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." The FAA therefore preempted a Montana law declaring arbitration clauses to be unenforceable unless printed in underlined, capital letters on the first page of a contract.). In particular, states "may not . . . decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995). Therefore, to avoid FAA preemption, the standard governing this case must apply equally to all the Terms of Sale and should not disproportionally impact enforcement of the arbitration clause specifically.

## B. Reasons for Certification

"Certification is within the sound discretion of the federal court and is appropriate when it will conserve time, energy, and resources of the parties as well as of the court itself." *Hartford Ins. Co. of the Midwest v. Cline*, 427 F.3d 715, 716–17 (10th Cir. 2005) (citation and internal quotation marks omitted).

Several reasons support certification here.  We anticipate that the certified question can be resolved on the facts that are undisputed in this case.  But if a resolution of the question depends on additional fact finding, that process can be accomplished in federal court based on the guidance provided by the Supreme Court of Oklahoma.  Also, this case apparently raises an issue of first impression; although Oklahoma courts have recognized that a written contract can incorporate an extrinsic document by reference, *see High Sierra Energy, L.P. v. Hull*, 241 P.3d 1139, 1144 (Okla. Civ. App. 2010); *Monkey Island Dev. Auth. v. Staten*, 76 P.3d 84, 88 (Okla. Civ. App. 2003), the Supreme Court of Oklahoma has neither addressed a case similar to this one nor set standards for incorporation by reference that would resolve this case.  It is particularly appropriate for the state court to define the law here because of the possibility that it will be influenced by state policy concerns relating to consumer contracts.  Should the Supreme Court accept our request to answer the certified question, we would expect its resolution of the question to be dispositive of this appeal.

## C.    Related Case

Finally, we note that the district court's ruling in this case may be contrary to that of another federal district court, which applied New Jersey law to a set of contracts involving BuildDirect that are substantially identical to the Quotation used here.  *Compare* Aplt. App. at 177–78 (Order at 5–6, *Walker v. BuildDirect.com Techs., Inc.*, Civ. No. CIV-11-800-D (W.D. Okla. Sept. 28,

2012) (denying motion to compel arbitration)), *with id.* at 147–49 (Order at 2–4, *Edgewater Promenade, 123, LLC v. Build Direct*, Civ. No. 08-1128(JAG) (D.N.J. Dec. 29, 2008) (granting motion to compel arbitration)). We say "may be" contrary even though the results are different, because we cannot determine from the order in *Edgewater* whether the disparate results were compelled by factual distinctions. Of course, New Jersey and Oklahoma law may differ.

## III. CONCLUSION

We certify this question to the Supreme Court of Oklahoma. We greatly appreciate the consideration of this request. The clerk of this court shall submit to the Supreme Court of Oklahoma a certified copy of this order, together with copies of the briefs filed in this court and copies of the judgment of the district court. The clerk of this court shall also transmit a copy of this certification order to counsel for all parties to the proceedings in this court and to the Clerk of the United States District Court for the Western District of Oklahoma, attention case No. 5:11-cv-00800-D.

In compliance with Okla. Stat. tit. 20, § 1604(A)(4), the court also provides the following information regarding the names and addresses of counsel of record:

On behalf of Eric and Shannon Walker:

    George H. Brown
    Tony Gould
    Joshua C. Stockton

Brown & Gould
136 N.W. 10th Street, Suite 200
Oklahoma City, OK 73103

On behalf of BuildDirect.com Technologies, Inc.:

Brion Brady Hitt
Sterling E. Pratt
C. William Threlkeld
Christopher Todd Ward
Fenton Fenton Smith Reneau & Moon
211 North Robinson Avenue, Suite 800N
Oklahoma City, OK 73102

This appeal is ABATED pending the consideration of this certification

request.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge